**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | ) |
| v. | ) **Crim. No. 07-054 (RMU)** |
| | ) **Sentencing: 01/17/08** |
| | ) |
| **EDWARD WIGGINS** | ) |

<u>**MEMORANDUM IN AID OF SENTENCING**</u>

  Defendant, Edward Wiggins, through undersigned counsel,  respectfully urges the Court to find that a mandatory minimum 60 month sentence is sufficient to satisfy the statutory sentencing goals under all the circumstances in this case.  In support of this request defendant submits the following sentencing memorandum, along with several character letters[1].

<u>**FACTUAL BACKGROUND / OFFENSE CONDUCT** </u>:

  In or about July 2005, a confidential informant ("CI"), believed to be working off criminal charges, targeted Mr. Wiggins to make a controlled purchase of crack cocaine.  Mr. Wiggins knew the CI for many years.  The CI had done favors for Mr. Wiggins in the past. When the CI asked Mr. Wiggins if he could do him a favor and help him obtain 31 grams of crack cocaine because his regular supplier was unable to supply him the cocaine, Mr. Wiggins foolishly agreed.  Mr. Wiggins, who had not been involved in any drug dealing for a long period of time, still knew individuals who were involved in cocaine dealing.  As a result of those connections, Mr. Wiggins was able to find someone to supply the 31 grams of crack cocaine for the CI.  On or about July 13, 2005, Mr. Wiggins advised the CI that he was able to get the cocaine.  Thereafter, the CI informed the government that Mr. Wiggins was willing to sell him 31 grams of crack cocaine for $1,000.  The CI and law enforcement then arranged for a controlled

---

[1] Counsel is unable to file the character letters with this memorandum because counsel has not returned to the office since leaving town on December 26th.  Counsel expects to return to the office on January 7th, and will file the character letters at that time.

2

buy.  The next day the CI, accompanied by an undercover officer ("UC"), conducted the first transaction with Mr. Wiggins.

Thereafter, Mr. Wiggins had no further drug dealings with the CI or UC for nearly 16 months.  In or about November 2006, more than a year later, the CI again contacted Mr. Wiggins and asked if he could help him obtain a quantity of crack cocaine.  Mr. Wiggins agreed and, like the first time, a controlled buy was arranged.  On or about November 8, 2006, the CI and UC met Mr. Wiggins and purchased the crack cocaine.  This time the UC was introduced to Mr. Wiggins. The CI and UC asked Mr. Wiggins if he would deal directly with the UC, and Mr. Wiggins agreed.[2]  The following week the UC called Mr. Wiggins and asked to purchase a quantity of crack cocaine.  Mr. Wiggins, as he had on the two prior occasions, agreed to act as a middleman for the sale of crack cocaine.  On or about November 16, 2006, Mr. Wiggins met the UC and sold him a quantity of crack cocaine.  On each of the three occasions, Mr. Wiggins obtained the requested quantity of crack cocaine and then delivered it to the CI and/or UC.  Mr. Wiggins did not keep any drugs or money from any of those transactions, and was not involved in any other illegal drug deals during that time.[3]

On or about March 13, 2007, a three count indictment was returned, charging Mr. Wiggins with three counts of unlawful distribution of cocaine base in violation of  21 U.S.C. 841(a)(1) and (b)(1)(B)(iii), each count corresponding to one of the three occasions discussed above.  On or about July 13, 2007, two years after the CI first targeted Mr. Wiggins, he was arrested and arraigned on the indictment in this case.  Once Mr. Wiggins understood the nature of the allegations against him, he promptly indicated his desire to accept responsibility and

---

[2]  This is a common law enforcement practice because it strengthens the government's case, and enables the government to bring a case against an individual without requiring the CI to testify.

[3]  Obviously he admits that he was involved with drugs to the extent that he obtained marijuana for personal use during that time.  However, he had been removed from the world of selling drugs for many years.  His only "customer" was the CI (and the UC through the CI), and the deals with the CI were the only ones in which he assisted in distributing any drugs.

3

authorized counsel to seek a plea agreement in the case. Because Mr. Wiggins had a number of very dated convictions, the parties agreed that it was prudent to request a pre-plea criminal record investigation to assure that there would be no surprises. The Court authorized the Probation Department to conduct that investigation, and it was confirmed that Mr. Wiggins is not a career offender. Thereafter, the parties finalized the plea agreement in the case.

On or about October 2, 2007, Mr. Wiggins pled guilty to Count One of the Indictment in exchange for the government's agreement to dismiss the two remaining counts. A pre-sentence report (PSR) was ordered and sentencing is currently scheduled for January 17, 2008.

## PRE-SENTENCE REPORT AND ADVISORY SENTENCING GUIDELINES :

The PSR indicates that the total offense level is 27 based on all relevant conduct. Mr. Wiggins' criminal history is category III. The resulting advisory sentencing guideline range is 87 to 108 months.[4] The statutory mandatory minimum sentence is 60 months. Defendant is not contesting the guideline calculation in the PSR.

The government agreed not to oppose a sentence at the low end of the guideline range. For the reasons set forth below, counsel is respectfully urging the Court to find that the mandatory minimum sentence is more than sufficient to meet the sentencing goals enumerated in 18 U.S.C. 3553(a) - (f). In addition, counsel respectfully urges the Court to recommend placement in the 500 hour drug program; recommend a designation close to Washington, D.C.; and permit him to self-surrender to the Bureau of Prisons (BOP). Counsel also urges the Court not to impose a fine.

---

[4] Counsel would note that he originally thought Mr. Wiggins would be a criminal history category II, and that the guideline range would be 78 to 97 months. However, this case is unusual in that a 23 year old theft offense, which normally would not result in any criminal history points, resulted in 3 criminal history points because the BOP rules required the sentence to be tacked onto the end of the heroin distribution sentence he received the same year. Had the sentences been served in reverse order, counsel would only be asking for an 18 month variance from the bottom of the range.

4

**DEFENDANT'S HISTORY AND CHARACTERISTICS**:

As the PSR reflects, Mr. Wiggins is a 54 year old man who has made tremendous strides in turning around his life over the past fifteen years. Mr. Wiggins had a very rough start in life. He never knew his father, or even his father's name. He was raised in foster care from the age of five months, and began acting out when he was about ten years old after learning the identity of his biological mother. He began getting into trouble, and has a juvenile record which began when he was ten years old. He also began using illicit drugs when he was very young. He started using marijuana and then moved to PCP. He began to commit more serious offenses during that time period. Then he began using heroin and became addicted. He fought that addiction for more than ten years. During that time he committed the normal offenses committed by heroin users - shoplifting, petty larceny, theft, and distribution of drugs. When he was released from prison after serving the sentences for those offenses, he became addicted to crack cocaine. He was returned to prison and ultimately released more than ten years ago. While the convictions are numerous, most are for relatively minor offenses consistent with a person suffering through a series of drug addictions. Significantly, his last conviction prior to his arrest in this case was in 1985, more than 22 years ago.

Since then, he has been a different person. Following his release from prison in 1995, he obtained employment as a maintenance worker with one of the larger property management companies in the area. He worked his way up the ladder, changing companies a couple of times. Along the way he has obtained training and certifications in HVAC operations, and in many other aspects of home and building repair and maintenance. He was employed as a maintenance supervisor with Equity Management Company from 1997 until 2004. Since 2004 he has been the maintenance supervisor at Oxford Manor Apartments in Washington, D.C. He has been a model employee, who is very well regarded in the Oxford Manor community, where he has spent most of his time over the past decade. [See attached character letters]. Mr. Wiggins has made a remarkable turn-around in his life. He was finally able to conquer his drug problem, and he has

been able to obtain and maintain employment for the past twelve years.

Mr. Wiggins also started a new family soon after beginning his turn-around. He maintains a common-law marital relationship with Sabrina Berry. His 9 year old son and 13 year old step-son live with them. According to his friends, family, and daycare provider, he is a very good person, a hard worker, and has been a devoted father to his children. Virtually every day he drops his children off for pre-school care in the morning and picks them up from their day care provider in the afternoon. He has provided a loving, caring environment for them - something he never had when he was young. [5]

In short, Mr. Wiggins has found his moral compass over the past decade, and has become a productive member of the community . Notwithstanding his misconduct in the case, he has demonstrated that he is a good person with a strong commitment to his family and a very strong work ethic. His transformation is commendable and quite remarkable. He understands that there is no excuse for the horrible mistake he made when he involved himself in the offense conduct which brings him before the Court. Nevertheless, the mandatory minimum sentence of 60 months is more than sufficient for a 54 year old man with health problems under all the circumstances of this case.

**SENTENCING  FACTORS**:

    **a)**       **THE POST-<u>BOOKER</u> SENTENCING FRAMEWORK.**

<u>United States v. Booker</u>, 125 S.Ct. 738 (2005) marked the end of twenty years of mandatory federal sentencing guidelines. Under <u>Booker</u>, the guideline range is now advisory, and the sentence must be imposed in accordance with the factors set forth in 18 U.S.C. 3553(a),

---

[5] In this respect, Mr. Wiggins' foolish decision to help the CI obtain crack cocaine is quite tragic. He will now be separated from his children and family for several years. In addition, he has had to do one of the most difficult things he has ever done in his life - sit down and explain to his children the mistake he made, with the hope they can understand, forgive him, and perhaps learn from his mistake.

6

taking into account the sentencing guideline range.  The import of 18 U.S.C. 3553(a) is that the Court should impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in the statute.   "The federal sentencing statute, as modified by Booker, requires a court to give respectful consideration to the Guidelines, but 'permits the court to tailor the sentence in light of other [§ 3553(a)] concerns as well.'"  Kimbrough v. United States, ___ S.Ct. ___, p. 4 (2007) WL 4292040 (U.S.) (Citation omitted).   While the guideline range must be consulted in determining the appropriate sentence, it is now clear that courts can not presume the guideline range to be reasonable in all cases. See, Gall v. United States, ___ S.Ct. ___, p. 11 (2007) WL 4292116 (U.S.).


**b)    18 U.S.C. 3553(a) FACTORS**

The factors enumerated in 18 U.S.C. 3553(a) support defendant's sentencing request in this case.  To pass constitutional muster, a district court must now impose a sentence that is "sufficient, but not greater than necessary" after weighing, in the exercise of its discretion,

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the [federal sentencing] guidelines . . .; (5) any pertinent policy statements (A) issued by the Sentencing Commission . . .; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7).  Price, 409 F.3d at 442.   Counsel submits that a full consideration of the factors enumerated above leads to the conclusion that the mandatory minimum sentence is sufficient to satisfy those considerations.

7

A 60 month sentence is a significant sentence of imprisonment.  It is not a mere slap on the wrist, particularly for a 54 year old man.   Such a sentence will remove Mr. Wiggins from his family and the community for lengthy period of time.  Furthermore, Mr. Wiggins accepted responsibility for his conduct and entered an early plea.  Instead of blaming the CI, as many defendants would, he blamed himself.  Such an attitude is another indication of rehabilitation and a reduced risk of recidivism.  There is little doubt that 60 months incarceration is more than sufficient to deter Mr. Wiggins from further criminal activity.  In addition, since Mr. Wiggins will be on supervised release following his imprisonment, he will be subject to further incarceration if he violates any condition of his supervision.  Thus the requested sentence is more than necessary to adequately protect the community from any further crimes on the part of Mr. Wiggins.  18 U.S.C. § 3553(a)(2)(C).   In addition,  it is sufficient to deter others from committing similar crimes. See 18 U.S.C. § 3553(a)(2)(B).

Moreover, a sentence of 60 months imprisonment, followed by supervised release, will more than adequately reflect the seriousness of the offense under all the circumstances in this case.  See 18 U.S.C. § 3553(a)(2)(A).  This case is unusual in that Mr. Wiggins was not involved in selling drugs when he was enticed by the CI to help him find a source of crack cocaine.[6]  The CI was motivated by his own criminal problems to ensnare Mr. Wiggins, an old "friend" from his drug-involved days.  The CI succeeded  by playing on their history of doing favors for each other.  Mr. Wiggins exercised horrible judgment in agreeing to find a source for these drug deals, and in acting as the middleman.  However, unlike most people who stand before the Court for sentencing in drug cases, Mr. Wiggins was not a drug dealer.  He was simply a person who unfortunately still knew people in the game because of his longstanding involvement with drugs,

---

[6]  The government conceded at the detention hearing that it did not have any evidence of drug dealing on Mr. Wiggins part except for the 3 controlled buys in the indictment.  The reason that the government had no other evidence of drug dealing after nearly two years is that Mr. Wiggins was not otherwise involved in selling drugs.  He only became involved in these deals as a favor to the CI.  He was not motivated to make money or get back into the game.  He merely failed to think about the consequences, and will now pay a huge price for his mistake, no matter what sentence the Court decides to impose.

8

and who agreed to involve himself in three controlled drug buys over a 16 month period.

Finally, counsel submits that the total sentence in this case needs to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment *in the most effective manner*." 18 U.S.C. § 3553(a)(2)(D) (emphasis added). As the PSR reflects, Mr. Wiggins will benefit from substance abuse treatment. Although all of the BOP facilities have some type of substance abuse treatment , Mr. Wiggins really needs the benefit of the "500 hour" drug program (RDAP), a comprehensive BOP program which has significantly reduced recidivism rates for those participants. A sentence of 60 months or less will increase Mr. Wiggins' chances of being considered by the BOP for one of the RDAP programs. Thus the requested 60 month sentence seeks to provide needed substance abuse treatment in the most effective manner, thereby providing the proper balance between the need for treatment and the need to consider the other statutory sentencing factors.

      **c)**     **United States v. Pickett[7] Factors**

Finally, counsel would note that since Mr. Wiggins is being sentenced for crack cocaine offenses, his sentencing must also be consistent with the D.C. Circuit decision in United States v. Pickett, 475 F.3d 1347 (D.C. Cir. 2007). In Pickett, the Court of Appeals observed that the crack cocaine guideline in U.S.S.G. § 2D1.1 does not permit individualized consideration for each offender. In addition, the 100-to-1 crack - powder ratio in § 2D1.1 treats all crack cocaine offenders as if they committed violence, when in fact many have not. Pickett, 475 F.3d at 1354. In addition, the opinion recognized that many retail crack cocaine dealers receive longer sentences than the wholesale drug distributors who supply the powder cocaine from which crack is produced, which often leads to disparate treatment and anomalous results. The result has been that the strict application of the crack cocaine sentencing guideline leads to unreasonable sentences. In Pickett , the D.C. Circuit found that:

---

[7] United States v. Pickett, 475 F.3d 1347 (D.C. Cir. 2007)

9

In terms of the sentencing factors of Sec. 3553(a), the Commission thus believes that its Guideline for crack distributors generates sentences that are "greater than necessary," exaggerates "the seriousness of the offense" of crack trafficking, does not "promote respect for the law," and does not "provide just punishment for the offense." 18 U.S.C. Sec. 3553(a), (a)(2)(A). The Commissions's self-assessment does not rest on the particulars of any one offender. The sentencing factors just mentioned, as well as Sec. 3553(a)(6), which deals with "unwarranted sentence disparities" are not entirely confined to the individual characteristics of the particular defendant. ***See, United States v. Simpson***, 430 F.3d 1177, 1186 (D.C.Cir. 2005). It therefore seems to us beyond doubt that the district court erred in refusing to evaluate whether sentencing Pickett in accordance with Guidelines 2D1.1,and its 100-to-1 ratio, would effectuate the purposes of sentencing set forth in Sec 3553(a)." **[475 F.2d at 1354]**

Although the crack cocaine Guidelines were recently amended, the courts must still look at the individual defendant in determining whether the crack cocaine Guideline is sufficient, but not greater than necessary, to accomplish the sentencing goals enumerated in 18 U.S.C. 3553(a). Some courts have applied greater variances based on reduced crack-powder ratios in cases that do not involve violence or other factors warranting the 100-to-1 ratio. Thus it is instructive to look at the corresponding guideline range for cocaine powder. The guideline range for 125.2 grams of powder cocaine, after a 3 level reduction for acceptance of responsibility, is 24 to 30 months (based on a total offense level of 15 and a criminal history category III). There was no violence in this case. Mr. Wiggins' involvement was limited to 3 discreet incidents over a 16 month period. He did not possess or use a firearm. Thus, counsel submits that the current crack cocaine guideline still over-states the seriousness of the offense in Mr. Wiggins' case. In light of Pickett, a sentence of 60 months would be a fair and just punishment for the offense in this case, and would promote respect for the law.

## 500 HOUR DRUG PROGRAM  PLACEMENT:

As noted above, Mr. Wiggins has a longstanding substance abuse problem. Counsel recognizes that he stated to the PSR writer that he did not consider his substance abuse issues to be a problem, but those comments were taken a little out of context. Counsel understood those comments to mean that Mr. Wiggins does not consider them a problem in the sense that, in spite

of his use of alcohol and marijuana, he is able to function at work and at home.  His recent use of alcohol and marijuana did not seem to interfere with his ability to perform his job or care for his family.  He naturally is comparing his current lifestyle with his lifestyle and problems during his prior periods of substance abuse.  However, it is clear from counsel's conversations with Mr. Wiggins that he understands that substance abuse is still a problem on other levels.  He understands that his longstanding history of drug involvement affected his judgment and influenced his decision to help the CI obtain crack cocaine.   He understands that it is not really alright to use marijuana, or drink alcohol on a daily basis.   He understands that there is a direct connection between his longstanding drug relationships and his poor judgment in this matter. Thus Mr. Wiggins would likely benefit from the intensive drug program if the BOP determines that he is eligible to participate.

A number of federal prisons in the Mid-Atlantic area now have 500 hour residential drug abuse treatment programs (RDAP).   The RDAP inmates are housed together in a separate unit of the prison, and are provided specialized half-day treatment programming five days a week. These inmates generally spend the rest of their days on educational, vocational, and/or other training and programming.  The BOP has found that the RDAP inmates are significantly less likely to be recidivist or to relapse, and that the program makes a significant difference in the lives of the participating inmates when released from custody.   Thus Mr. Wiggins respectfully requests that the Court recommend placement in a 500 hour residential drug program.


**BUREAU OF PRISONS (BOP) DESIGNATION / OTHER RECOMMENDATIONS:**

Mr. Wiggins' family lives in the D.C. area.  Thus he respectfully requests that the Court recommend a BOP designation in the Mid-Atlantic area.  In addition, Mr. Wiggins requests that the Court not impose a fine. He can not really afford to pay a fine at this time, and respectfully requests that he be permitted to provide for his family with any monies earned prior to his imprisonment.   In addition, when an indigent defendant is required to pay a  fine during the

11

period of imprisonment, it often causes family hardship because of the application of the strict rules of the Financial Responsibility Program of the BOP. Often the money sent by family members for canteen and telephone accounts triggers a requirement that a portion of the monies be taken to pay the fine under the strict rules the BOP now applies. Thus the rules often end up punishing an inmate's family, rather than instilling a sense of responsibility in the inmate.

Finally, defendant respectfully requests that he be allowed to self-surrender to the federal prison when so directed, rather than spending the time between the sentencing and the designation at the D.C. Jail. Mr. Wiggins has demonstrated that he is reliable and can be trusted to self-surrender. His family will benefit from his continued financial support. In addition, the self-surrender will help Mr. Wiggins when he is classified by the BOP, and may enable him to get a better designation, and access to better programming, treatment, and/or training.

**CONCLUSION:**

In summary, 60 months imprisonment is not a slap on the wrist for this offense. It is a significant punishment for the crime. Such a sentence is also sufficient to afford general and specific deterrence; to protect the community from further crimes of the defendant; and to provide a reasonable opportunity for rehabilitation of the defendant. Thus counsel submits that the requested sentence properly balances the sentencing goals in this case, and results in a fair and just sentence.

Wherefore, Mr. Wiggins requests that he be sentenced to 60 months imprisonment; that no fine be imposed; that he be allowed to self-surrender; and that the following additional recommendations be included in the Judgment and Commitment Order:

1) BOP Designation in an appropriate facility in the Mid-Atlantic area; and

2) Placement in the 500 hour residential drug treatment program (RDAP).

12

Respectfully submitted,

/s/
Howard B. Katzoff (Bar # 348292)
717 D Street, NW Suite 310
Washington, D.C.  20004
(202) 783-6414
Attorney for Edward Wiggins

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing  Memorandum was electronically served on

Jean Sexton, Esquire, Office of the United States Attorney, 555 Fourth Street, N.W.,

Washington, D.C. 20530, and hand delivered to U.S Probation Officer Michael Penders, 333

Constitution Avenue, N.W., 2nd Floor, Washington, D.C. 20001, this  4th  day of  January  ,

2008.


_____/s/_____
                                                    Howard B. Katzoff